UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LORI J. GORDON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 3:11-CV-237 CAN |
| | ) |
| MICHAEL J. ASTRUE | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

On September 16, 2011, Plaintiff, Lori Gordon ("Gordon") filed her complaint seeking review of the final decision of the Commissioner of Social Security ("Commissioner"). She filed her opening brief on September 16, 2011, and the Commissioner filed his response on December 9, 2011. This Court now enters its ruling based on the consent of the parties and 28 U.S.C. § 636(c).

**I.    PROCEDURE**

On December 7, 2006, Gordon filed a claim for disability insurance benefits ("DIB") under Title II of the Social Security Act and a claim for supplemental security income ("SSI") under Title XVI. Both claims alleged a disability beginning November 23, 2006. Both claims were initially denied on March 19, 2007 and again upon reconsideration on May 29, 2007. On August 20, 2009, Gordon appeared at a hearing before an administrative law judge ("ALJ"). The ALJ issued his decision on December 28, 2009, denying Gordon's claims for benefits. Gordon then filed her complaint in this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

**II.    RELEVANT BACKGROUND**

Gordon was born on March 30, 1977 and was 32 years old at the time the ALJ issued his decision (Tr. 100). She had a GED and training as a certified nursing assistant ("CNA") (Tr. 145). Before her alleged disability, she had worked as a CNA, housekeeper, and laborer (Tr. 141).

A.  Medical Evidence

On August 28, 2006, a cyst was found on Gordon's thyroid (Tr. 207). Biopsy results showed that the cyst was benign. *Id*. In December 2006, Gordon complained of constant pain and swelling of her feet, ankles, hands, and migraine headaches allegedly due to Lupus (Tr 140). In March 2007, a physician ran a Lupus test on Gordon, which came back negative (Tr. 251). Gordon's complaints of joint pain were attributed to underlying osteoarthritis with degenerative joint disease of the knees (Tr. 254-256). It was recommended that she increase her daily activity and lose weight. *Id.*

In February 2007, a state agency psychologist evaluated Gordon (Tr. 217). The evaluation was unremarkable, and Gordon was assigned a Global Assessment Functioning score of 80.[1] Later in February 2007, a state agency reviewing psychiatrist opined that Gordon had no medically determinable impairment (Tr. 221).

In March 2007, it was noted by Dr. Domingo, one of Gordon's treating physicians, that Gordon had good range of motion in her shoulders, elbows, and wrists (Tr. 252). Her complaints of worsening migraines were treated with medication. *Id*. She was also referred to a sleep study. *Id*. The sleep study revealed a very mild sleep-associated respiratory disturbance (Tr. 261).

---

[1] GAF scores represent on a single day an individual's overall level of functioning, including symptom severity. The GAF numeric scale runs from 0 through 100. The higher the GAF score, the less severe the symptoms and the individual will have a higher level of functioning. *See* American Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 32-34 (4th ed. 2000)(DSM-IV).

2

Gordon saw Dr. Domingo again in May 2007 and she noted that Gordon's use of a prescription muscle relaxant helped her joint pain, although not as much in her lower extremities (Tr. 249-250). There was no significant evidence of lower leg or foot swelling. *Id*. Also in May 2007, Gordon underwent a neurological evaluation for her headache complaints (Tr. 378). The results were unremarkable (Tr. 379). In August 2007, Gordon's physician noted an improvement in her foot swelling through the use of prescription water pills (Tr. 460).

In March 2008, Gordon went to a different physician with complaints of knee and back pain, as well as ankle pain and swelling (Tr. 468). The physician noted right knee tenderness, but his report was otherwise unremarkable. *Id*. Gordon was told to return in one week. *Id*. Gordon followed up with Dr. Domingo on March 31, 2008, complaining of increasing knee pain and stated that prescription water pills had helped in the past (Tr. 367). The examination showed some slight tender points on her chest, upper and lower back, and a positive test for torn cartilage in her right knee (Tr. 369). There was no note of any significant swelling. *Id*. Because of Gordon's complaints of pain in her right knee, she was referred to an orthopedist (Tr. 361). An MRI of her right knee was taken and showed mild joint swelling. *Id*.

In March 2009, Dr. Domingo examined Gordon because of ongoing complaints of back and knee pain, difficulty sleeping, and numbness and tingling of the legs (Tr. 367). Dr. Domingo noted no leg swelling, good range of motion in the shoulders, elbows, knees, and ankles, and no joint tenderness. *Id*. Multiple tender points on the chest, back, hips, knees, and elbows were noted, and at this point, fibromyalgia syndrome was first diagnosed by Dr. Domingo. *Id*. A prescription anti-anxiety medication helped with the fibromyalgia pain. *Id*. Gordon underwent arthroscopic surgery on her right knee on April 9, 2009 (Tr. 396). In May 2009, state agency

physicians determined that Gordon's chronic pain, migraine headaches, and obesity limited her to light exertional level work with occasional climbing of ladders, ropes, or scaffolds and otherwise frequent posture movements (Tr. 240-247).

On July 20, 2009, Dr. Domingo stated that Gordon's capacity for prolonged standing and walking of more than 20 minutes would be limited due to history of low back pain and severe knee osteoarthritis (Tr. 394). She also noted that Gordon would need to alternate between sitting and standing every 15 minutes with 5 minutes of rest. *Id*.

### B. ALJ Hearing on August 20, 2009

#### 1. Gordon's Testimony

Gordon testified at the ALJ hearing that she was disabled due to knee problems and swelling and pain in her back (Tr. 35). She worked as a home health aide until February 2009, but quit because she could not take her medicine when she was working, and her knee gave out when assisting her patient (Tr. 33). Gordon stated that the pain in her knees was not constant, and that some days were worse than others (Tr. 35). On bad days, she stayed in bed with her legs elevated to alleviate the swelling (Tr. 38). Some days she could stand between four to five hours, but others only about ten to fifteen minutes before having to take a break (Tr. 36). When her feet swelled, she could walk one block, and sitting was a problem because her legs and knees would go numb (Tr. 37). Additionally, she testified that she had migraines and her hands sometimes swelled so that she had trouble holding onto things. (Tr. 38, 41). In her opinion, she could lift only ten pounds comfortably (Tr. 38).

#### 2. Vocational Expert Testimony

The ALJ asked the vocational expert if an individual with a GED and Gordon's past work

4

history who was limited to sedentary work and limited to jobs that do not require more than occasional balancing, stooping, kneeling, crouching, or crawling would be able to perform any of Gordon's past employment (Tr. 43). The vocational expert stated that all of her past work would be eliminated due to exertional criteria (Tr. 44). The ALJ then asked if there are jobs that this hypothetical individual could perform. *Id*. The vocational expert said the jobs of telephone clerk, assembler, and order clerk could be performed by this hypothetical individual. *Id*.

The ALJ then limited the hypothetical individual to a person with limitations consistent with Gordon's testimony. *Id*. The vocational expert replied that based on Gordon's need to lie down throughout the day, the number of bad days during the week, and difficulty using her hands, all employment would be eliminated. *Id*.

### 3. ALJ Determination

On December 28, 2009, the ALJ found that Gordon was not disabled (Tr.24). The ALJ found that Gordon had the residual functional capacity ("RFC") to perform sedentary work, reduced by only occasional balancing, stooping, kneeling, crouching, and crawling (Tr. 17). The ALJ found that given this RFC, Gordon could not perform any of her past work, but could perform other jobs that existed in significant numbers in the national economy and was therefore not disabled (Tr. 23-24).

## III. ANALYSIS

### A. Standard of Review

The standard of review for an ALJ's decision is whether it is supported by substantial evidence and free of legal error. *See* 42 U.S.C § 405(g); *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Golembiewski v.*

5

*Barnhardt*, 322 F.3d 912, 915 (7th Cir. 2003). However, an ALJ's legal conclusions are reviewed *de novo*. *Haynes*, 416 F.3d at 626. Substantial evidence is more than a scintilla and means such relevant evidence as a reasonable mind might accept to support such a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1972). A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. *Haynes*, 416 F.3d at 626. An ALJ decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

### B. Gordon's Motion for Remand

Gordon must establish that she is disabled to be entitled to benefits under the Social Security Act. *See* 42 U.S.C. § 423(a)(1)(D). The Act specifically defines "disability" as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled. The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920; *Briscoe*, 425 F.3d at 352. If the ALJ can find that the claimant is not disabled at any step, he does not go on to the next step. 20 C.F.R. §§

404.1520(a)(4), 416.920(a)(4).

An impairment or combination of impairments is considered severe if the applicant's physical or mental ability to perform basic work activities is significantly limited. 20 C.F.R. § 404.1521(a). The combination of impairments is taken into account, even if each individual impairment would not be considered severe. 20 C.F.R. § 404.1523. If the applicant does not meet this requirement, then the applicant is not disabled. 20 C.F.R. § 404.1520(c). In order to be considered severe, the impairment must either cause the applicant's death, or has lasted or is expected to last for a continuous period of at least 12 months. 20 C.F.R. § 404.1509. When assessing the severity of an impairment, the applicant's age, education, and work experience are not considered. *Id.* However, it is still possible for the applicant to have been disabled for a period of time in the past even if the applicant currently does not have a severe impairment. *Id.*

If the applicant's impairment or combination of impairments meets the requirements outlined in Subpart P, Appendix 1 and also meets the duration requirement, then the applicant is disabled without considering the applicant's age, work experience, or education. 20 C.F.R. § 404.1520(d). Once the ALJ finds that the applicant is not disabled after the first three steps, then the ALJ assesses the RFC. 20 C.F.R. § 404.1520(e). The RFC is the applicant's ability to do physical and mental work activities on a sustained basis despite limitations. *Id.* Once the RFC is determined, it is compared to the applicant's past relevant work to see if the applicant could still perform that type of work. 20 C.F.R. § 404.1520(f). If the applicant could still perform past relevant work, then the applicant is not disabled. *Id.* Past relevant work includes any substantial work performed within the last 15 years. 20 C.F.R. § 404.1560(b)(1). The applicant has the burden to prove the first four steps, but upon reaching step five, the burden shifts to the

Commissioner. 20 C.F.R. § 404.1520(e).

Gordon contends that the ALJ was required to accept the limitations given by Dr. Domingo when determining her RFC. When determining a claimant's RFC, the ALJ must consider the entire record, but the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians. *Schmidt v. Astrue,* 496 F.3d 833, 845 (7th Cir. 2007). "A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if supported by the medical findings and consistent with substantial evidence in the record." *Skarbek v. Barnhart,* 390 F.3d 500, 503 (7th Cir. 2004), *see* 20 C.F.R. § 404.1527(d)(2). If the ALJ does not give the treating physician's opinion controlling weight, he must present "good reasons" for discounting that opinion. *See* 20 C.F.R. §404.1527(d)(2). An ALJ's conjecture is never a permitted basis for ignoring a treating physician's views. *Moss v. Astrue,* 555 F.3d 556, 560 (7th Cir. 2009).

Here, the ALJ gave more weight to Dr. Domingo's opinion than that of the state reviewing physician's in regards to Gordon's ability to stand and walk (Tr. 22). The ALJ concluded that the objective findings in the record of fibromyalgia, back problems, and right knee pain resulting in surgery were more consistent with sedentary work, rather than light work proposed by the state physician. *Id*. However, Dr. Domingo's opinion that Gordon could never climb, kneel, crouch, crawl, or stoop was discounted as inconsistent with the record because another examining physician recommended that she engage in more physical activity and lose weight (Tr. 22, 254). Therefore, to the extent that Dr. Domingo's opinion was discounted, the ALJ supported his determination with substantial evidence.

Finally, Gordon states that since the ALJ hearing, she has had surgery on her left knee

8

and has been diagnosed as HIV positive, and that these issues should be considered in her disability determination. "New evidence is material only if it is relevant to the claimant's condition during the relevant time period encompassed by the disability application under review." *Schmidt v. Barnhart,* 395 F.3d 737, 742 (7th Cir. 2005). Since these medical issues are not relevant to the time period encompassed by her disability application, they are not material and need not be considered.

## III. CONCLUSION

Because the ALJ's RFC determination was supported by substantial evidence and Gordon's most recent medical issues are not material, Gordon's motion for remand is **DENIED**. Accordingly, this Court **AFFIRMS** the ALJ's decision.

**SO ORDERED**

Dated March 19, 2012.

s/Christopher A. Nuechterlein  
Christopher A. Nuechterlein  
United States Magistrate Judge